UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED
AUG 19 2022
Nathan Ochsner, Clerk of Court

| | |
|---|---|
| SANDRA BENOIT and LINDA A. SMITH, <br><br> Plaintiffs, <br><br> v. <br><br> LEE & MURPHY LAW FIRM, ERIN MURPHY, CLARK, LOVE & HUSTON, G.P., CLAYTON A. CLARK, SCOTT A. LOVE, BLAKE DEADY and SHELLEY HUSTON <br><br> Defendants. | DOCKET NO.: <br><br> CIVIL ACTION <br><br> COMPLAINT FOR VIOLATIONS OF: <br> 1. DUTY OF TOTAL CANDOR, <br> 2. BREACH OF FIDUCIARY DUTY, <br> 3. FRAUD, AND FRAUD IN INDUCMENT, <br> 4. LEGAL MALPRACTICE, <br> 5. CIVIL CONSPIRACY, <br> 6. AIDING AND ABETTING, <br> 7. DECLARATORY JUDGMENT, <br> 8. FORFEITURE OF FEES, <br> 9. AND FRAUDULENT CONCEALMENT <br><br> [JURY TRIAL DEMANDED] |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Linda A. Smith, a resident of Bakersfield, California and Sandra Benoit, a resident of Cissna Park, Illinois with this their Original Complaint complaining of Lee & Murphy Law Firm a law firm located at 743 W. 18th Street, Houston, Texas 77008 in the Southern District of Texas; Erin Murphy, an attorney in that firm who resides in Houston, Texas and may be served at 743 W. 18th Street, Houston, Texas 77008; Clark, Love & Hutson, G.P. a law firm located at 440 Louisiana St., Unit 1700, Houston, Texas 77002 in the Southern District of Texas, hereafter CLH; Clayton A. Clark a lawyer residing in the Southern District of Texas and a member of CLH who may be served at 440 Louisiana St., Unit 1700, Houston, Texas 77002; Scott A. Love, a lawyer residing in the Southern District of Texas and who may be served at 440 Louisiana St., Unit 1700, Houston, Texas 77002 also a member of CLH; Blake Deady, a lawyer residing in Houston, Texas now employed by Archer Systems, LLC, an affiliate of CLH who may be served at 1775 St. James Place, Suite 200, Houston, Texas 77056; and Shelley Hutson, a lawyer residing in the Southern District of Texas and a member of CLH who may be served at 440 Louisiana St., Unit 1700, Houston, Texas 77002; and would show the Court as follows in this their Original Complaint:

## I. JURISDICTION

This Court has jurisdiction of this case under 28 U.S.C. 1332 as the Plaintiffs are residents of California and Illinois respectfully and the Defendants are residents of the Southern District of Texas. The amount in controversy is in excess of $75,000.00. Venue is proper as each of the Defendants does business in the Southern District of Texas. This case was previously pending in the 23rd District Court of Wharton County, Texas, a court without jurisdiction to hear this case. That case was voluntarily non-suited on June 20, 2022.

## II. STATEMENT OF THE CLAIMS

INTRODUCTION TO THE CASE

The Plaintiffs are females and each has had a vaginal mesh implant inserted into their respective bodies that was manufactured by the Boston Scientific Corporation. Boston Scientific is a corporation based in Massachusetts. The Defendants are lawyers which actively pursued claims against Boston Scientific and other manufacturers of vaginal mesh products in the United States. They filed and tried many cases against vaginal mesh manufacturers in various states with a great deal of success. These firms had numerous clients in many states and handled along with other lawyers a Multi District Case in the U.S. District Court for the Southern District of West Virginia. These firms reached a prohibited aggregate settlement with Boston Scientific for a

large number of its clients. The aggregate settlement was against the public policy of the State of Texas and the Rules of the State Bar of Texas.

In order to divide the proceeds of this settlement with its clients, the Defendants devised a plan to have the division of this aggregate settlement approved by a compliant state district judge in Wharton County, where none of the cases were ever pending. A plan was devised by the Defendants which had the cases filed in the 23rd District Court of Wharton County as "interventions" in order to save filing fees necessary when individual cases are filed. Damages for the "intervenors" sought by Scott A. Love of CLH included mental anguish, disfigurement, lost wages, loss of consortium, pain and suffering and future damages similar to these which were expected to be sustained in the future.

Later, the clients of the Defendants including these Plaintiffs had their cases decided by "Court Appointed Special Masters in Chancery" who were instructed to decide the damages owed to each plaintiff only based on their medical records. This plan which excluded many of the damages sought by Mr. Love in his intervention was designed to limit the efforts of these Defendants and maximize their profits at the expense of the Plaintiffs.

### A.   THE CLAIM OF LINDA SMITH

Linda Smith of Bakersfield, California had a Boston Scientific mesh implant placed into her vagina on November 19, 2008 in California. She had revision surgery in an attempt to remove part of the mesh on or about November 21, 2011. Most of the mesh remains in her body however. She continues to suffer from daily pain and constant nausea and has had not been able

to have a normal sex life since she received the implant. Linda Smith became a client of the Defendants in 2014.

### B. THE CLAIM OF SANDRA BENOIT

Sandra Benoit had a Boston Scientific mesh implant placed into her vagina on March 22, 2010 and had two revision surgeries in an attempt to remove at least part of the vaginal mesh which was arranged by the Defendant Lee & Murphy at her expense, and with an artificially inflated cost arranged by the Defendants. Sandra is a resident of Illinois and was a resident of that state when the Boston Scientific vaginal mesh was implanted in her vagina. Most of the mesh remains in her vagina preventing her from having sexual intercourse without causing intense pain and discomfort since the implant was inserted into her body.

### III. THE PLAINTIFFS WERE KEPT IN THE DARK ABOUT THE STATUS OF THEIR CASES UNTIL AFTER THE STATUTE OF LIMITATIONS IN THEIR RESPECTIVE STATES OR IN MASSACHUSETTS BARRED THE DEFENDANTS FROM FILING SUIT AGAINST BOSTON SCIENTIFIC FOR THE PLAINTIFFS

Neither of the Plaintiffs were ever advised that their cases against Boston Scientific Corporation had not been filed in *any* court of competent jurisdiction including California, Illinois or Massachusetts, the home of Boston Scientific. This failure to disclose harmed these Plaintiffs while benefiting other similarly situated claimants who were also clients of the Defendants.

The scheme devised by Defendants rewarded clients whose cases had been filed or in which discovery had been initiated, while placing the Plaintiffs whose cases were never initiated at a distinct disadvantage. Whether their cases had been filed or not was entirely at the discretion

of the Defendants and whether discovery had been initiated depended entirely on the Defendants. The failure of the Defendants to file suit or initiate discovery prevented the Plaintiffs from achieving a greater recovery for their injuries and was a major factor in the breach of trust owed by the Defendants to the Plaintiffs. See Exhibit A attached and incorporated by reference.

The Plaintiffs were never advised that the Defendants did not file their suits timely in any court of competent jurisdiction or that their respective statutes of limitation had barred their suits against Boston Scientific. When the Plaintiffs were advised that that they would have to retain other counsel if the Plaintiffs did not accept the settlement proposal of the Defendants that no other counsel would take their cases as the cases were barred by the applicable statutes of limitation in their home states or in Massachusetts, the home state of Boston Scientific, the Plaintiffs and others similarly situated were forced to accept the Defendant's settlement terms.

## IV. THE CLAIMS OF THE PLAINTIFFS WERE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS WHEN THE PLAN FOR DIVIDING THE PROCEEDS OF THE AGGREGATE SETTLEMENT WERE DISCLOSED TO THE PLAINTIFFS

At the time the Plaintiffs were finally notified of the aggregate settlement, their respective statutes of limitation, as well as the statute of limitations in Massachusetts where Boston Scientific has its main office, would have barred the Plaintiffs' claims. As a result, when the Plaintiffs were finally notified that they could be part of the disallowed aggregate settlement, but only if they accepted the terms and procedures set by the Defendants, they had no choice but to accept the terms and procedures dictated by the Defendants. If the Plaintiffs did not accept these unorthodox terms, they were told that the Defendants would withdraw as their counsel.

6

The Plaintiffs were then forced to accept the settlement proposals of the Defendants, although other clients of the Defendants received much greater recoveries for similar injuries when their cases were actually filed. The Plaintiffs were advised that Plaintiffs would have to retain other counsel if the Plaintiffs did not accept the settlement proposal of the Defendants.

Whether or not these cases had or had not been filed depended solely on the discretion of the Defendants. The Defendants actions constituted coercion and were a violation of their duties owed to these and other Plaintiffs.

## V. AFTER THE PLAINTIFFS' STATUTES OF LIMITATIONS BARRED THEIR RESPECTIVE CLAIMS, THE PLAINTIFFS WERE ADVISED THAT THE DEFENDANTS HAD "GOOD NEWS"

On July 28, 2015 the Plaintiffs were advised in separate letters by the Defendant, Blake Deady a lawyer with CLH that he had "good news" for each of them. The "good news" related by Mr. Deady an authorized agent of CLH was that CLH had "agreed to a two-part settlement process" with Boston Scientific. Mr. Deady, acting for the Defendants, advised the Plaintiffs that if they elected to be included in Settlement Phase 1, a 'Court Appointed Special Master in Chancery" will review your medical records and make a representation to the court. This letter was misleading and deceptive because it did not advise the Plaintiffs that the recommendation from the "Court Appointed Special Masters " would be the only evidence to be considered by the district court. The Plaintiffs were not told by the Defendant Deady that the plaintiffs would not be allowed to appear before the "Court Appointed Special Masters", that no witnesses would be

7

allowed, that no documents would be admitted into evidence, that the elements of damages alleged by Mr. Love in his purported "interventions" would not be considered and that the Plaintiffs could not even witness the hearings in which their claims would be decided. The "good news" letter from Mr. Deady was false, misleading and deceptive. The Defendant, Deady omitted telling the Plaintiffs the bad news that their cases were now barred by the applicable statute of limitations.

The Plaintiffs were not notified at the time of the "good news" letter from Mr. Drady of the following which did not constitute "good news" :

    a.    Their cases had not been filed within the time limits allowed by either California or Illinois law;

    b.    If either Plaintiff opted out, they could not retain other counsel, because the statute of limitations in their respective States would bar their claims;

    c.    Neither Plaintiff was told that their considerable damages for pain and suffering, mental anguish and disfigurement, which were continuing, would *not* be considered by the special master;

    d.    Neither Plaintiff was told that the "special master" would *not* take evidence, hear testimony, receive exhibits into the record, have a court reporter to take testimony or even allow those participating to be present when their cases were being considered;

    e.    Neither Plaintiff was told that their attorneys, Clark Love and Lee Murphy, would *not* be present at hearings before the "special master";

    f.    Neither Plaintiff was told that an appeal was available from the ruling of the "special master" to the court or to the Thirteenth Court

       of Appeals in Corpus Christi since the chosen court with no jurisdiction was within the Thirteenth Supreme Judicial District;

g.    Neither Plaintiff was told that neither of their attorneys, Clark Love nor Lee Murphy, would participate in any attempt to increase their awards, even though both Plaintiffs would be required to give their attorneys 40% of their recovery for any increase in their damages awarded by the special master as a result of their own efforts.

h.    Neither Plaintiff was told that the case in which the "special master" was to be appointed had *no* jurisdiction over the parties including Ms. Smith, Ms. Benoit and Boston Scientific;

i.    Neither Plaintiff was told that the substantial fees of the "special master" would be paid out of the settlement funds provided by Boston Scientific, rather than being taxed as costs as required by Rule 171 of the Texas Rules of Civil Procedure;

j.    Neither Plaintiff was told that Clark Love and Lee Murphy would withdraw from their case and refuse to file it in a court of competent jurisdiction if they did not agree with the procedure;

k.    Neither Plaintiff was told that the civil procedures involving special masters would *not* be followed in the settlement procedure; and,

l.    Neither Plaintiff was told that neither of their attorneys, Clark Love nor Lee Murphy, would represent them before the special master as is the normal procedure under Rule 171 of the Texas Rules of Civil Procedure.

The failure to advise the Plaintiffs of these problems with their cases constituted a breach of the fiduciary duties owed to the Plaintiffs. The failures to inform the Plaintiffs of the true status of their cases was a breach of the duty of complete candor owed to the Plaintiffs.

## VI.   CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

9

This is a claim for breach of fiduciary duty against the Defendants which owed a fiduciary duty to the Plaintiffs under Texas law as well as the law of their home states where they signed the contingent fee contracts with the Defendants giving the Defendants the right to sue Boston Scientific Corporation.

The Defendants failed to file suit against Boston Scientific and failed to advise the Plaintiffs that these Defendants failed to file any suit. Further, the Defendants failed to advise the Plaintiffs that the fact that no suit against Boston Scientific had been filed on their behalf would negatively affect the amount the Plaintiffs would receive by settlement.

After signing up as clients of Lee Murphy and Clark Love, the Plaintiffs were frequently sent correspondence from the Defendants regarding the Defendants' activities against various transvaginal mesh ("TVM") manufacturers. These letters were designed to give the impression that the Plaintiffs' suits had been filed. Neither of the Plaintiffs were ever told that their respective statutes of limitations now barred their suits in their home states. The Defendants failed to advise Linda A. Smith and Sandra Benoit of the Defendants' conflicts of interest in settling the clients' claims to the detriment of each client. The Defendants failed to advise Linda A. Smith and Sandra Benoit how each of their claims would be diminished or limited by the Special Master system to disburse the settlement. Linda A. Smith and Sandra Benoit only learned of these breaches of fiduciary duty after hiring the undersigned counsel, when their rights were fully explained for the first time.

## VII. FRAUDULENT CONCEALMENT

The Plaintiffs would show that the Texas Statute of Limitations should not run against the Plaintiffs because of the fraudulent concealment by the Defendants of the true status of the Plaintiffs' claims during their representation by the Defendants.

The Defendants never told the Plaintiffs that their cases had never been filed in a court of competent jurisdiction. The Defendants however misled the Plaintiffs regarding whether or not their case had been filed on many occasions which violated their duty of candor to the Plaintiffs. On March 24, 2015, CLH informed the Plaintiff Benoit that they were "writing to provide you an update on your case". In fact, on that date, the Plaintiff Benoit had no case pending in any court. This letter as well as many others was designed to lead the Plaintiffs into believing that cases had been filed in some court for them. The letter was designed to convince the Plaintiffs that if they stayed with CLH they would receive a large recovery. The letter mentioned jury verdicts of $18,500,000.00 and $26,744,443.00 obtained by the Defendant CLH for other clients. The Plaintiff Smith received an identical letter to that received by Sandra Benoit. The Plaintiff Smith received a letter from Michael Moreland dated September 8, 2014 which purported to "give you an update on your claim". The letter mentions that "60,000 cases were consolidated for pretrial purposes" indicating that her case was one of the 60,000. It does not mention that her claim was never filed in any court or that her case was not in the 60,000. This letter was misleading and deceptive like many others sent from the Defendants. None of these letters mentioned the true status of the cases of these or other Plaintiffs.

The Plaintiff Benoit also received an identical letter as that mentioned in the previous paragraph dated also on September 8, 2014. She also received a letter from CLH dated September 11, 2012 claiming that CLH was "working diligently to fully evaluate your case." It also stated that "the timing of the filing of your potential claim, as well as the jurisdiction where your case may be filed, is contingent upon our analysis of each jurisdictions law...." CLH indicated by this letter that her case would be filed, however her case was never filed in any court of competent jurisdiction. CLH did file an "intervention" including hundreds of other plaintiffs, after the statute of limitations on her claims had expired, in the 23rd District Court of Wharton County. The 23rd District Court had no jurisdiction of the "intervention". And no pretrial discovery or hearings were held in the "intervention".

On July 23, 2015, the Defendant Deady of CLH sent his "good news" letter to Linda Smith in Bakersfield. This letter advised that Boston Scientific had agreed to "immediately resolve claims of 1200 of our clients". This letter was also misleading and deceptive. It did not mention that her case had never been filed and the information regarding her case had never been sent to Boston Scientific by CLH.

This letter advised that a "Court Appointed Special Master in Chancery will review your medical records". The letter however did not advise the Plaintiff that her case had not been filed and that the Plaintiff Smith would be penalized because her suit was never filed, she would be penalized also because no discovery occurred in her "intervention" filed by CLH. In addition, the Plaintiff was not advised that she could not appear before the "Court Appointed Special Master in Chancery in any capacity.

The "good news" letter of July 23, 2015 advised the Plaintiff Smith that CLH was one of the most formidable pharmaceutical and medical device firms in the country". The letter however does not advise her how the settlement proceeds would be allocated or that the Plaintiff would not be allowed to present evidence regarding the major aspects of her damages. An identical "good news" letter was sent to the Plaintiff Benoit.

A month later, the Defendant Deady sent another letter with more "good news". This letter encouraged the Plaintiff to return the forms sent if she wanted any money. The Defendant also advised that the Plaintiff "could opt out of the settlement at a later date should you choose to do so." Mr. Deady did not advise that if the Plaintiff did choose to "opt out" of the proposed settlement, the time for filing suit with other counsel had long since expired or that CLH would not file suit in a court of competent jurisdiction.

On March 3, 2016 the Defendant Love sent a thirteen-page letter to Linda Smith claiming that he also had "good news" This letter also contained some exhibits. Mr Love later filed an "intervention" for both Plaintiffs in the 23rd District Court in which he sought damages for pain and suffering, mental anguish, lost wages, disfigurement and future damages. Without consulting either Plaintiff, the Defendant Love abandoned those claims. These were the most important aspects of the Plaintiffs claims for damages. Mr. Love also did not conduct any discovery in the "intervention" which would have increased the value of the Plaintiffs claims under the CLH scheme for division of the aggregate settlement.

The "good news" letter from the Defendant Love does advise the Plaintiffs that "it is in your best interest to participate in this CLH BSC Mesh Settlement". It also advised the Plaintiff

Smith and in an identical letter to the Plaintiff Benoit that " you do have the option to refuse the proposed settlement and retain another attorney to litigate your claims in court against BSC." Mr. Love does not advise either Plaintiff that their claims had not been filed in any court of competent jurisdiction and that the applicable statute of limitations would bar any suit by other counsel hired by that Plaintiff.

The "good news" letter from Mr. Love requests that the settlement remain confidential. This was contrary to established precedent which required that all plaintiffs in an aggregate settlement must be advised of the settlement amounts received by all participants in the aggregate settlement.

## VIII. THIS CASE WAS PENDING IN THE TWENTY THIRD DISTRICT COURT OF WHARTON COUNTY WHICH DID NOT HAVE JURISDICTION OF THE CLAIMS IT WAS REFILED IN THIS COURT TIMELY WHICH DOES HAVE JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

This case was previously in the 23rd District Court of Wharton County, Texas. It was voluntarily nonsuited there on June 20, 2022. The refiling was within sixty days as allowed by Section 16.064 (a) of the Texas Civil Practices and Remedies Code.

PRAYER FOR RELIEF AND DAMAGES

The Plaintiffs seek the issuance of citation and service on all Defendants and a trial by a jury in the Southern District of Texas. The Plaintiffs seek damages against all the Defendants to be assessed jointly and severally in accordance with Texas law. The Plaintiffs seek damages for deceptive trade practices, breach of fiduciary duty, the civil conspiracy in which all Defendants were involved with the intent to accomplish an unlawful procedure in violation of Texas law

involving an aggregate settlement prohibited in Texas and in violation of the Rules of Civil Procedure, legal malpractice, forfeiture of all fees earned under the plan the Defendants devised to prevent Plaintiffs from exercising their rights and privileges available under the Texas Rules of Civil Procedure, aiding and abetting, involvement in a joint venture to prevent the Plaintiffs from exercising their rights available under Texas, California or Illinois law and fraud. The Plaintiffs seek the same recovery as was received by clients of the Defendants whose cases were filed in courts of competent jurisdiction and in which jury trials were held. The Plaintiffs also seek all equitable relief available under Texas law. The Plaintiffs seek damages for each of the above claims as well as equitable relief including forfeiture of fees charged through the illegal procedure developed by the Defendants to prevent their clients from having their cases decided through normal processes allowed by Texas law. Further, the Plaintiffs seek all costs of court and attorney fees for preparation for trial, trial and for each step of the appellate process. Interest on all amounts from the earliest dates possible is also requested.

THE PLAINTIFFS REQUEST A TRIAL BY JURY

Respectfully submitted,

*George M. Bishop*

George M Bishop
Readmitted to the Southern District
March 3, 2022
State Bar No. 02353000
4191 F.M. 1155 South
Chappell Hill, Texas 77426
713-305-5510
George_bishop@sbcglobal.net
ATTORNEY FOR PLAINTIFF

/s/ B. Ward Maedgen
B. Ward Maedgen
*Pro Hac Vice Motion Forthcoming*
State Bar No. 00794211
8144 Walnut Hill Lane, Suite 1080
Dallas, Texas 75231
214-651-4288
ward@texcrime.com
ATTORNEY FOR PLAINTIFFS

| Factor | Formula Criteria | Your Points |
|---|---|---|
| 1. | Explant or revision surgery of a BSC POP Pelvic Product on or before December 1, 2015 = (20 points); or<br><br>Explant or revision surgery of a BSC SUI Pelvic Product on or before December 1, 2015 = (15 points). | 15 |
| 2. | Number of additional explant and/or revision surgeries (excluding Factor 1) on or before December 1, 2015, related to a BSC Pelvic Product:<br><br>1 surgery---------------2 points<br>2 surgeries-------------4 points<br>3 surgeries-------------6 points<br>4 surgeries-------------8 points<br>5 surgeries-------------10 points<br>Over 5 surgeries------15 points | 0 |
| 3. | Age at first BSC Pelvic Product implant:<br><br>Over 50 years------1 point<br>40yrs - 49 years---2 points<br>30yrs - 39 years---3 points<br>20yrs - 29 years---4 points | 1 |
| 4. | Number of medical procedures on or before December 1, 2015, (excluding Factors 1 and 2) [nonsurgical: e.g., cystoscopy, cystourethroscopy, injections (Coaptite®, BOTOX®, other), pelvic exams only under anesthesia, in-office trim and/or silver nitrate application, InterStim® therapy, nerve blocks, urodynamic testing, etc.]:<br><br>1 procedure------------------1 point<br>2 procedures----------------2 points<br>3 procedures----------------3 points<br>4 procedures----------------4 points<br>5 or more procedures-------5 points | 0 |
| 5. | **Advanced Litigation**[4] | 0 |
| 6. | **Deduction (CAPPED at -33%)** | 0 |
|  | Point Deduction for the following reason(s): (a) Other potentially liable Defendant; (b) Biologic component BSC Pelvic Product; or (c) Other potentially liable Defendant AND Biologic component BSC Pelvic Product. |  |
|  | **Total Allocated Points (Total of Factors 1-6)** | 16 |
|  | **Per point value**[5] | $6,528.00 |
|  | **Gross Minimum Payment (Total Allocated Points x Per Point Value)** | $104,448.00 |

---

[4] Subject to adjustment for special circumstances.

[5] The monetary "per point value" used in the Point Formula was determined by dividing the total amount allocated to all Claimants (less the *Sanchez v. Boston Scientific* Allocation, EIF, and the Administrative Allocation) by the total points awarded to all Claimants. The dollar value per point was then multiplied by your respective "Total Allocated Points" to determine your Minimum Gross Payment. The Minimum Gross Payment for each individual claimant can be calculated in the same manner.

46088

Page 6

EXHIBIT A

The following chart provides the details showing the allocated points and Minimum Gross Payment for every other claimant in the settlement:

## CLH BSC SETTLEMENT ALLOCATIONS

| | | |
|---|---|---|
| Total Allocation Awards for 1,199 Claimants | $43,020,500.00 | 81.2% |
| Total Allocation for *Sanchez, et al. v. Boston Scientific Corporation*; United States District Court for the Central District of California, Civil Action No. 15-1245-JFW | $2,200,000.00 | 4.2% |
| Extraordinary Injury Fund | $7,200,000.00 | 13.6% |
| Settlement Administration Expense Fund | $529,500.00 | 1% |
| Total Settlement | $52,950,000.00 | 100% |

| Allocated Points | Minimum Gross Payment | Number of Claimants |
|---|---|---|
| 0.67 | $4,373.76 | 128 |
| 1 | $6,528.00 | 276 |
| 1.34 | $8,747.52 | 55 |
| 2 | $13,056.00 | 233 |
| 2.01 | $13,121.28 | 27 |
| 2.68 | $17,495.04 | 3 |
| 3 | $19,584.00 | 110 |
| 3.35 | $21,868.80 | 3 |
| 4 | $26,112.00 | 32 |
| 4.69 | $30,616.32 | 1 |
| 5 | $32,640.00 | 4 |
| 6 | $39,168.00 | 2 |
| 7 | $45,696.00 | 1 |
| 10.72 | $69,980.16 | 36 |
| 11.39 | $74,353.92 | 32 |
| 12.06 | $78,727.68 | 25 |
| 12.73 | $83,101.44 | 14 |
| 13.4 | $87,475.20 | 4 |
| 14.07 | $91,848.96 | 24 |
| 14.74 | $96,222.72 | 16 |
| 15.41 | $100,596.48 | 6 |
| 16 | $104,448.00 | 35 |
| 16.08 | $104,970.24 | 4 |
| 16.75 | $109,344.00 | 2 |
| 17 | $110,976.00 | 40 |
| 17.42 | $113,717.76 | 1 |

| | | |
|---|---|---|
| 18 | $117,504.00 | 24 |
| 18.09 | $118,091.52 | 2 |
| 18.76 | $122,465.28 | 1 |
| 19 | $124,032.00 | 14 |
| 20 | $130,560.00 | 15 |
| 20.1 | $131,212.80 | 3 |
| 21 | $137,088.00 | 7 |
| 22 | $143,616.00 | 3 |
| 23 | $150,144.00 | 6 |
| 24 | $156,672.00 | 1 |
| 25 | $163,200.00 | 1 |
| 27 | $176,256.00 | 1 |
| 28 | $182,784.00 | 1 |
| 30.82 | $201,192.96 | 1 |
| 40 | $261,120.00 | 1 |
| 41 | $267,648.00 | 1 |
| 42 | $274,176.00 | 1 |
| 43 | $280,704.00 | 1 |
| 44 | $287,232.00 | 1 |

## IV. Effect of Release

By signing and returning the Disclosure Letter Acknowledgment (Exhibit A) and the Confidential Settlement and Release Agreement ("Release") (Exhibit B), you are releasing all of your claims against BSC and its related entities or individuals connected with your use of a BSC Pelvic Product, whether known or unknown, arising out of, relating to, resulting from, or in any way connected with your use of a BSC Pelvic Product. You are agreeing to accept your Minimum Gross Payment and, in exchange, you are giving up your right to a trial against the Released Persons, as that term is used in the Release. As typically happens in personal injury claims, if you accept this settlement, should your injuries become worse in the future, if you become aware of previously unknown injuries, or if you suffer additional damages that you believe are related to your BSC Pelvic Product, you will have already released any claim against BSC and the Released Persons for these injuries and any additional future damages; provided, however, if you have a qualifying revision and/or explant surgery, you will receive the payment provided for by the Extraordinary Injury Fund as explained below in Section VIII. BSC is only paying money in return for a promise that it will never again have to face a claim from the Claimants who receive money in the CLH BSC Mesh Settlement. (**However, to the extent you have been implanted with another non-BSC mesh product, the Release does not include any claims you may have against other manufacturers relating to your non-BSC mesh product.**) Please note that by signing these documents you and your spouse are also releasing any derivative claims, which may exist, including, but not limited to, loss of consortium, loss of affection, and loss of services.

46088